UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARLENE OLIVIA MELTON,

             Plaintiff,             **DECISION AND ORDER**
                                             **No. 13-CV-6188(MAT)**
      -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

             Defendant.
_____

## INTRODUCTION

Plaintiff, Marlene Olivia Melton ("Plaintiff" or "Melton"), brings this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security denying her application Social Security Income ("SSI") benefits.

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"). For the reasons set forth below, the Court grants the Commissioner's motion, denies the Plaintiff's cross-motion, and dismisses the Complaint.

## PROCEDURAL HISTORY

On April 19, 2010, Plaintiff filed an application for SSI alleging disability as of March 25, 2010, which was denied on July 28, 2010. Administrative Transcript [T.] 124. On August 4, 2011, at Plaintiff's request, an administrative hearing was conducted via video-conference before administrative law judge

("ALJ") MaryJoan McNamara, at which Plaintiff, who was represented by counsel, testified. T. 69-71, 74-107. Vocational Expert ("VE") Dothel W. Edwards, Jr. also testified. T. 107-121. On September 21, 2011, the ALJ issued a decision finding that Plaintiff was not disabled since April 19, 2010, the date the application was filed. T. 27-40.

The Appeals Council denied Plaintiff's request for review on February 15, 2013, making the ALJ's Decision the final decision of the Commissioner. T. 1-7. This action followed.

## FACTUAL BACKGROUND

### Plaintiff's Hearing Testimony

Plaintiff, who was born in 1962, testified that she obtained a two-year college degree in information processing and had previously done "office work." T. 83. Plaintiff testified that she last worked in March 2010 and that she had stopped working because of back pain. T. 82-83. She testified that she typically watches television, sometimes cooks, and sleeps during the day. T. 94. Plaintiff testified that she did not drive and did not have a car, took medical transportation to get around to her appointments, but had taken public transportation to get to the hearing. T. 94. She did not use an assistive device to walk. T. 95.

She testified that she was currently being treated by her primary care physician for her back pain, and that she received

injections and took Naprosyn for her pain.  Sometimes, she also took a muscle relaxant.  T. 85.

Plaintiff testified further that she experiences difficulty getting in and out chairs and sometimes needs assistance because of her back pain.  T. 100.  She testified that she cannot sit or stand too long, and needs to switch positions about every 20/30 minutes. T. 101.  She also testified that she experiences leg pain in both legs.  T. 103.

Plaintiff testified that she has "GI" problems with her stomach and also has "some emphysema."  T. 104.  As a result of her stomach pain, Plaintiff claims that she has lost weight, "can't hold anything down," and frequently experiences vomiting and nausea.  T. 105.  Plaintiff testified that she uses an albuterol inhaler, as needed.  She also testified that she smokes.  T. 106.

Plaintiff testified that she had a history of depression and was currently taking Zoloft and Wellbutrin.  Her depression symptoms included crying, frustration, and a lack of interest in doing things.  T. 88.  Plaintiff was never hospitalized for depression, never went to the emergency room for it, and had never been committed any time.  She was last treated by a mental health provider in or around 2009 because she had felt herself "not wanting to do anything."  T. 88.  According to her, she stopped attending her mental health treatment in 2010 because "she felt that it wasn't necessary" and that "[she] could handle it on [her] own."  T. 90.

Plaintiff also testified that she underwent inpatient and outpatient treatment in 2007 for alcohol use.   According to her, she left in 2008 and remained sober up until early 2010.   T. 92. Plaintiff testified that she currently drinks two or three times a week twenty to forty ounces of beer at a sitting.   T. 92.

**The Medical Evidence**

In November 2009, Plaintiff began pain management treatment with Beatrice Deshommes, M.D.   T. 336-338.   Dr. Deshommes noted that Plaintiff reported having lower back pain for years, which had worsened to the point it was interfering with her daily activities. T. 336.   Plaintiff reported to Dr. Deshommes that the pain was a constant, shooting pain that went down into her left leg. Plaintiff reported that the pain was between a six and ten on a scale from one to ten, and that it was accompanied by cramping and was worse when sitting in place.   Dr. Deshommes noted that an MRI of Plaintiff's lumbar spine showed mild left-sided neural foraminal stenosis at L3-4 and L4-5.   During her examination, Dr. Deshommes observed that Plaintiff walked with a normal gait and was able to perform heel and toe walking, had limited range of motion in her back and difficulty with facet-loading maneuvers on her rights side, and no motor or sensory deficits.   T. 336-337.   Dr. Deshommes prescribed Lyrica for Plaintiff's pain and Amitriptyline for Plaintiff's sleep and depression issues.   Dr. Deshommes recommended that Plaintiff start epidural injections.   T. 338.

In a note dated February 17, 2010, Dr. Deshommes indicated that Plaintiff was not allowed to return to work until March 24, 2010.  Dr. Deshommes also completed a physical assessment of employability for the Monroe County Department of Human Services, in which she reported that Plaintiff had abnormal function in her lumbar spine that caused her to be "moderately limited" in walking, standing, sitting, pushing, pulling, bending, lifting, and carrying. T. 376-381.

At a follow-up appointment with Dr. Deshommes in April 2010, Plaintiff reported that her medications were not helping to relieve her back pain, that she had not taken the Lyrica for more than a couple days, and that she declined to take the Amitriptyline. Dr. Deshommes observed that Plaintiff was able to change from sitting to standing without assistance and walked with a slow, but normal gait.  Plaintiff continued to demonstrate limited range of motion in her lower back and normal sensation.  T. 332-334.

On May 4, 2010, Plaintiff underwent a consultation with David Speach, M.D. for her back pain.  Dr. Speach noted that Plaintiff reported that the pain was made worse with turning, twisting, lifting, standing, and bending.  Plaintiff reported to Dr. Speach that the epidural injection she received in February 2010 did not help relieve her pain.  During the examination, Plaintiff reported that Plaintiff had pain with light touch to her spine.  Dr. Speach noted that Plaintiff demonstrated limited range of motion in her

-5-

spine, but normal strength in her lower extremities and no signs of motor or sensory deficits.  T. 405-407.

Dr. Speach noted that a June 2009 MRI showed degenerative changes at L3-4 and L4-5 with an annular tear at L4-5.  T. 406. Based on his examination, Dr. Speach diagnosed Plaintiff with mechanical lower back pain with degenerative disc disease at L4-5 and L5-S1.  Dr. Speach noted that surgery was not recommended, and referred Plaintiff for physical therapy.  T. 406.

In July 2010, Plaintiff met with Dr. Speach, who reported that Plaintiff had some mild improvements in her pain using Tramadol. Plaintiff reported that she had not started physical therapy. Dr. Speach noted that Plaintiff was able to walk with a slow gait and continued to show no signs of motor or sensory deficits. T. 403.

In September 2010, Plaintiff met with Dr. Deshommes again, at which time she noted that Plaintiff reported that she still had back pain but that her medication helped "somewhat."  T. 460. Dr. Deshommes reported that Plaintiff's nausea had improved and Plaintiff denied vomiting, sedation, pruritus or diarrhea. T. 460. Dr. Deshommes reported that Plaintiff's upper extremity strength was equal bilaterally, her lower extremity strength was full on the right for quad and calf dorsiflexion, and her left lower extremity strength was 4+/5 for all.  Dr. Deshommes noted that Plaintiff was able to rise from a chair independently, her posture was erect, she had a slight left-favored gait, her range of motion was restricted

with flexion, extension, and left/right rotation.  Dr. Deshommes recommended a median branch block and advised Plaintiff to continue with her medication and physical therapy.  T. 461.

On January 14, 2011, Plaintiff underwent a right-sided medial branch injection with Abdul Shahid, M.D.  T. 451-459.  At a follow-up appointment, Plaintiff reported worsening of her symptoms soon thereafter, although she had a "transient benefit" from the medial branch injection.  Plaintiff also reported that pain medication given to her by Dr. Shahid's office did not provide her relief. Upon examination, Dr. Shahid noted that Plaintiff did not appear in any acute distress and was able to rise from a chair without difficulty.  Dr. Shahid noted that Plaintiff walked with an antalgic gait on the left side, demonstrated limited range of motion in her lumbar region and full strength in her lower extremities.  Dr. Shahid also noted that Plaintiff's facet loading was positive on the right side and she had no motor or sensory deficits.  Dr. Shahid recommended another round of epidural injections, which Plaintiff underwent on June 13, 2011.  T. 452.

In a medical source statement dated June 23, 2011, Dr. Deshommes assessed that Plaintiff was "very limited" in pushing, pulling, bending, lifting, and carrying in an eight hour workday.  She opined that Plaintiff was "moderately limited" in walking and standing, and noted that there was no evidence of limitations in sitting, seeing, hearing or speaking.  Dr. Deshommes indicated that Plaintiff was capable of participating in

activities, but for no more than 20 hours per week.  She noted that the expected duration of these limitations was for six months. Dr. Deshommes assessed further no lifting, pushing, or pulling greater than 10 pounds and no repetitive stooping or bending. Dr. Deshommes also opined in a statement dated August 8, 2011 that Plaintiff's back issues would persist despite her alcohol use. 470-473.  In October 2011, Dr. Deshommes reported similar findings. T. 480-483.

**Consultative Examinations**

On July 19, 2010, K. Finnity, Ph.D. performed a consultative mental examination at the request of the Agency.  T. 409-412. Dr. Finnity reported that Plaintiff had limited mental health treatment in the past as she had received therapy for "about one year" in 2007.  Dr. Finnity noted that Plaintiff reported that she woke up frequently in the night and had frustration with her current physical limitations.  Dr. Finnity noted that Plaintiff reported that she abused alcohol and cocaine until 2007, at which time she enrolled in and completed a program at Unity Mental Health for substance abuse treatment.  T. 409.

Dr. Finnity reported that Plaintiff was cooperative, her manner of relating was adequate, she was dressed appropriately, and was well-groomed.  She also reported that Plaintiff's gait, posture and motor behavior were normal, her eye contact was appropriate, her speech was fluent, her quality of voice was clear, her expressive and receptive language was adequate, her thought

processes were coherent and goal-directed, her affect was flat, her mood was dysthymic and her sensorium were clear.  Dr. Finnity further reported that Plaintiff was oriented to person, place and time, her attention and concentration were intact, she was able to do serial threes accurately, and her recent and remote memory skills were intact.  Dr. Finnity opined that Plaintiff's cognitive functioning was average, her general fund of information was appropriate to experience, and she had good insight and judgment. T. 410.

Dr. Finnity noted that Plaintiff reported that she was able to dress, bathe and groom herself, that she could cook, clean, and do laundry, and that she could shop and manage her money.  She noted that Plaintiff reported socializing occasionally with friends, that she had a good relationship with her family, and that she enjoyed reading.  T. 411.

Dr. Finnity opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks.  She also opined that Plaintiff could maintain attention and concentration and a regular schedule.  She opined further that Plaintiff could learn new tasks and perform complex ones, make appropriate decisions, relate with others and deal with stress, and could manage her own funds.  T. 411.

Also on July 19, 2010, Plaintiff underwent a consultative examination by S. Picinich, D.O. at the request of the Agency. T. 413-417.  Dr. Picinich noted Plaintiff's complaints of back pain

that radiated into her legs.  Dr. Picinch also noted that Plaintiff reported that she had peptic ulcer disease, for which she had been receiving treatment for approximately six months.    T. 413. Dr. Picinich noted that Plaintiff reported smoking cigarettes and consuming alcohol and admitted to a history of cocaine use for 22 years.  Plaintiff reported that she cooked for herself, cleaned, did laundry, shopped, dressed and groomed herself, and was unable to lift or bend and therefore could not perform child care. Plaintiff also reported that she watches TV, listens to the radio, and reads.  T. 414.

Upon examination, Dr. Picinich observed that Plaintiff appeared to be in no acute distress, her gait was normal, she could walk on her heels and toes without difficulty, could perform a full squat, her stance was normal, she used no assistive devices and needed no help changing for the exam or getting on and off the exam table.  Plaintiff was able to rise from a chair without difficulty. T. 415.

Dr. Picinich assessed that Plaintiff's cervical spine showed slight reductions in range of motion.  Dr. Picinich assessed mild scoliosis and noted that Plaintiff's lumbar spine demonstrated reduction in forward flexion and bilaterally reduced lateral flexion.  T. 415-416. Dr. Picinich noted that Plaintiff's straight leg raises on the right were 20 degrees and 30 degrees on the left, while her seated straight left raises were "not confirmatory." T. 416.  Plaintiff had full range of motion in her shoulders,

elbows, wrists, and hands bilaterally, while her hip, knee and back flexion was limited.  Dr. Picinich noted that Plaintiff's hand finger dexterity was intact and her grip strength was full.  She opined that Plaintiff was "limited to a mild to moderate extent for prolonged sitting, standing, walking, climbing stairs, bending, lifting, carrying, and kneeling due to the low back and knee pain." T. 417.  Plaintiff had no limitation for reaching or handling objects or hearing, seeing, or speaking.  Plaintiff had mild to moderate limitation for traveling due to the musculoskeletal complaints.  T. 417.

On July 26, 2010 state agency psychologist T. Harding reviewed the evidence in the file and assessed that Plaintiff had an affective disorder.  T. 418.  Harding opined that Plaintiff was mildly limited in her activities of daily living, moderately limited in maintaining social functioning and maintaining concentration, persistent and pace, and that she never had repeated episodes of deterioration of extended duration.  T. 428.  Harding assessed that Plaintiff was not significantly limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance;

the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to be aware of normal hazards and take appropriate precautions; and the ability to travel in unfamiliar places or use public transportation. T. 432-433. Harding assessed further that Plaintiff was moderately limited in the areas of: understanding, remembering, and carrying out detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and work-week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting;  and setting realistic goals or making plans independently of others. T. 432-433. Harding also opined that Plaintiff had the residual functional capacity to perform the full range of semi-skilled work on a sustained basis. T. 434.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.

Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir.

2003); see also Monguer, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.  The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims.   20 C.F.R. § 404.1520.   Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the

> Commissioner determines whether there is other
> work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The ALJ in this case used this five-step procedure to determine Plaintiff's eligibility for disability benefits. The ALJ first found that Plaintiff has not engaged in substantial gainful activity since April 19, 2010, the application date. Second, the ALJ found that Plaintiff has the severe impairments of thoracolumbar scoliosis and degenerative disc disease, and the non-severe impairments of abdominal pain, depression and substance abuse. T. 30-31. Next, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments. T. 32. The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform light work, with certain exceptions. T. 32-38. Next, the ALJ determined that Plaintiff is capable of performing past relevant work as a telephone operator, and, in the alternative, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. T. 38-40. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time period. T. 40.

The Commissioner maintains that the ALJ's decision is supported by substantial evidence. In her cross-motion, Plaintiff argues that remand is necessary because: (1) the ALJ did not postpone the administrative hearing; (2) the ALJ's "treating physician rule analysis" is not supported by substantial evidence;

(3) the ALJ improperly interpreted the "vague" medical source statement of consultative examiner Dr. Picinich; (4) the ALJ's credibility assessment was the product of legal error; and (5) the Appeals Council failed to consider the October 2011 statement from Dr. Deshommes. Pl's Mem. of Law (Dkt. No. 12-1) at 14-28.

> **A.  Plaintiff was Afforded a Full and Fair Administrative Hearing**

It is well-settled that before a district court can evaluate an ALJ's conclusions, the court must ensure that a disability claimant received a full hearing. <u>Echevarria v. Sec'y of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982) (holding that an ALJ must ensure that the claimant had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act" (citing <u>Gold v. Secretary of HEW</u>, 463 F.2d 38, 43 (2d Cir. 1972))). Due to the "non-adversarial nature" of social security proceedings, a full hearing requires the ALJ to "affirmatively develop the record." <u>Echevarria</u>, 685 F.2d at 755. Even where, as here, a claimant is represented by counsel, <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1999), the ALJ has a duty to contact medical sources and gather any additional information if the ALJ believes that the record is inadequate to make a determination. When the ALJ has failed to develop the record adequately, the district court must remand to the Commissioner for further development. <u>See, e.g.</u>, <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996).

First, Plaintiff argues that remand is warranted because the ALJ failed to postpone her administrative hearing, thereby depriving her of her right to a full hearing under the Act. Dkt. No. 12-1 at 14-16.

The Social Security Regulations explain that, upon a showing of good cause, an ALJ will change the time of a claimant's scheduled hearing and will reschedule the hearing. 20 C.F.R. § 416.1436(d). The regulations provide examples of circumstances establishing "good cause," which include, *inter alia*, "your representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing[.]" 20 C.F.R. § 416.1436(f)(2).

In this case, the ALJ complied with the SSA Regulations pertaining to postponement of hearings and made every reasonable effort to fully develop the record and to obtain information from the pertinent sources.

The record shows that, by letter dated July 28, 2011, Plaintiff's attorney requested a 30-day postponement of the administrative hearing on the basis that he was unprepared for the hearing at that time. In his letter, Plaintiff's attorney stated that he had been retained on May 2, 2011, had not begun collecting Plaintiff's medical records until July 14, 2011, and was therefore "presently incapable of preparing a brief or otherwise properly evaluating [the] case." T. 194.

The ALJ proceeded with the scheduled administrative hearing on August 4, 2011.  At the beginning of the hearing, Plaintiff renewed his request to postpone the hearing, indicating that he still did not have adequate time to prepare and needed to submit additional records, including medical RFC statements, mental health treating notes, a brief, and diagnostic imaging related to Plaintiff's alleged emphysema.  T. 74-77.  The ALJ refused the request, noting in her written decision that Plaintiff had had three months to prepare for the hearing and she therefore "did not find that there was any valid reasons to postpone the hearing."  T. 27.  At Plaintiff's attorney's request, however, the ALJ held the record open after the hearing to allow him to submit additional records. T. 75.

On August 12, 2011, the ALJ received and granted a request from Plaintiff's counsel for a 7-day extension.  T. 28, 270. Thereafter, Plaintiff's attorney submitted medical documentation from Dr. Deshommes, and nothing else.  T. 479-483.  The ALJ noted in her written decision that said decision was completed "more than 30 days after the hearing occurred, allowing more than sufficient time for the submission of the identified records."  T. 27.

Given the three month time frame Plaintiff's attorney had to initially prepare the case and that he admitted at the hearing that the record was complete with treating records aside from the particular aforementioned documents, the Court finds that ALJ

-18-

reasonably denied Plaintiff's request to post-pone the hearing.
Further, the ALJ satisfied her duty to develop the record by
holding the record open after the hearing and subsequently granting
Plaintiff's request for an additional 7-day extension. See
Robinson v. Chater, 1995 U.S. Dist. LEXIS 19504, 1996 WL 5067, at
*7 (S.D.N.Y. Jan. 5, 1996) (ALJ satisfied his duty to develop the
record where claimant's representative indicated that he would
submit additional medical records within three weeks after the
hearing); see Colon v. Apfel, 98 Civ. 4732 (HB), 2000 U.S. Dist.
LEXIS 2928, 2000 WL 282898, at *5 (S.D.N.Y. Mar. 15, 2000) (ALJ
under no further obligation to develop the record once counsel
indicated that he would try to provide additional pertinent
information and the ALJ held the record open); see also Weingarten
v. Apfel, 98 Civ. 2475 (HB), 1999 U.S. Dist. LEXIS 2978, 1999 WL
144486, at *4 (S.D.N.Y. Mar. 17, 1999) (ALJ satisfied his duty to
develop the record where claimant's counsel indicated he would
submit additional medical records within one week after hearing);
Robinson v. Chater, 94 Civ. 0057 (SHS), 1995 U.S. Dist. LEXIS
19504, 1996 WL 5067, at *7 (S.D.N.Y. Jan. 5, 1996) (ALJ satisfied
his duty to develop the record where claimant's representative
indicated that he would submit additional medical records within
three weeks after the hearing).

Plaintiff argues further that even if the ALJ followed the
regulations denying her request for postponement of the hearing,

remand is nonetheless warranted because she received ineffective assistance of counsel at the hearing. Dkt. No. 12-1 at 16-18. She cites counsel's alleged lack of preparedness at the hearing and his failure to submit "any additional records" after the hearing other than those from Dr. Deshommes. Id. at 16.

A claimant in a social security matter has a statutory and regulatory right to representation. See 42 U.S.C. § 406; 20 C.F.R. § 404.1705. However, this right falls well below the standard of right to counsel established by the Sixth Amendment for criminal cases. See Evangelista v. Secretary of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). Nonetheless, as Plaintiff correctly points out, federal courts have found ineffective assistance of counsel in the social security disability context as a grounds for remand. See, e.g., Arms v. Gardner, 353 F.2d 197, 199 (6th Cir. 1965) (remanding where claimant's attorney "took no part in examination of witnesses, offered no testimony on [claimant's] behalf and gave the [claimant] no apparent legal assistance in the preparation of the case, admitting of the record that he knew very little about Social Security laws."); Tillman v. Weinberger, 398 F. Supp. 1124, 1129 (N.D. Ind. 1975) (remanding where claimant's representative failed to show up for the proceeding, sending instead "a law student or law graduate"); Kelley v. Weinberger, 391 F. Supp. 1337, 1343-44 (N.D. Ind. 1974) (remanding where claimant's representative failed "to develop

evidence concerning the claimant's difficulty in performing his daily activities" and failed to object to improper questions).

The Court has reviewed the hearing transcript in this case and finds no basis to remand on account of the assistance rendered by Plaintiff's attorney at the administrative proceeding. Contrary to Plaintiff's contentions, Plaintiff's attorney sufficiently developed evidence concerning Plaintiff's mental and physical impairments, advocated on Plaintiff's behalf at the hearing, and supplemented the record after the hearing with additional documentation.

Plaintiff claims that remand is warranted because her attorney admitted on the record at various instances that he was not prepared for the hearing. However, a review of the record reflects that he admitted to not being able to develop a "very thorough record," as he usually did in such cases, because he was "new on the case" and because "Ms. Melton has psychological issues which are more serious than perhaps we realized and that this has impeded her ability to cooperate as well as she possibly should have." T. 75. To compensate for not having been able to develop "a very thorough record" at the time of the hearing, he reasonably requested that the ALJ keep the record open after the hearing, which the ALJ agreed to do. T. 75. Moreover, Plaintiff's attorney acknowledged on the record that, despite not having RFCs from all of Plaintiff's medical providers at that time, he had reviewed the

remainder of the record and confirmed that it was otherwise complete with treating records.  T. 76-77.  During the hearing, Plaintiff's attorney assisted Plaintiff with her testimony by clarifying the ALJ's questioning, pointed out evidence in the record for the ALJ, and also cross-examined the VE.  Additionally, after the hearing, Plaintiff's attorney successfully requested an extension to file the additional documentation and submitted same from Dr. Deshommes, including a physical assessment for determination of employability form, a separate materiality statement, and a physical impairment questionnaire form diagnosing Plaintiff with lumbar degenerative disc disease.  T. 479-483.

Plaintiff also argues that remand is warranted based on her attorney's failure to follow up and/or submit additional records with respect to her physical therapy treatment and her alleged emphysema.  With respect to the physical therapy, a review of the record reflects that the ALJ elicited information about this issue during the hearing, it was referenced in Plaintiff's medical records (T. 460), and that the ALJ considered this evidence in arriving at her disability determination.  With respect to Plaintiff's alleged emphysema, there is nothing in the record, aside from Plaintiff's own statement at the August 4, 2011 hearing that she has "some emphysema" and that she had undergone a chest x-ray two weeks before the hearing, that suggests Plaintiff had been diagnosed with emphysema or was being treated for emphysema.

Moreover, Plaintiff did not claim in her disability application (or at any point throughout the administrative process) that emphysema prevented her from working. Additionally, the Court notes that the evidence in the record shows that Plaintiff had a history of asthma (for which she used an inhaler) and that this particular issue was indeed addressed by the ALJ during the hearing and was also taken into account in the ALJ's disability determination. Finally, to the extent that Plaintiff argues that remand is warranted because there may have been additional records that her attorney failed to obtain, this argument fails because it is entirely speculative.

Accordingly, the Court finds no basis to remand the case based on ineffective assistance of counsel. In sum, Plaintiff was afforded a full and fair administrative hearing.

**B.   The Treating Physician Rule**

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's long-time primary care provider, Dr. Deshommes. Specifically, she argues that the ALJ's RFC assessment failed to take into account Dr. Deshommes assessment that Plaintiff was unable to work for forty hours per week and that Plaintiff was only capable of sitting and standing for, at most, six hours out of an eight-hour work day. Dkt. No. 12-1 at 19-20.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).   An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011).  The less consistent an opinion is with the record as a whole, the less weight it is to be given. Otts v. Comm'r of Soc. Sec., 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when

the opinion is not inconsistent with substantial evidence."  <u>See</u>
<u>Martin v. Astrue</u>, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion
controlling weight, he must consider a number of factors to
determine the appropriate weight to assign, including: (i) the
frequency of the examination and the length, nature and extent of
the treatment relationship; (ii) the evidence in support of the
treating physician's opinion; (iii) the consistency of the opinion
with the record as a whole; (iv) whether the opinion is from a
specialist; and (v) other factors brought to the Social Security
Administration's attention that tend to support or contradict the
opinion.  <u>See</u> 20 C.F.R. § 404.1527©.  "Failure to provide 'good
reasons' for not crediting the opinion of a claimant's treating
physician is a ground for remand."  <u>Snell v. Apfel</u>, 177 F.3d 128,
133 (2d Cir. 1999) (citation omitted).

Here, the ALJ gave the opinion of Dr. Deshommes "some, but not
controlling weight."  T. 36.  The ALJ set forth the treating
physician rule and acknowledged that Deshommes was "an acceptable
medical source who has a four (4) year treatment history with the
claimant."  <u>Id.</u>  However, she also discussed how the opinion of
Dr. Deshommes was, in certain respects, inconsistent with and
unsupported by the record.  For example, the ALJ pointed out that
Dr. Deshommes opined in her June 23, 2011 statement that Plaintiff
was "very limited" in pushing, pulling, bending, lifting, and

carrying in an eight-hour workday and was "moderately limited" in walking and standing.   However, the ALJ also noted that the objective evidence (namely, the one available MRI image from June 2009) showed only mild findings, and that the treatment notes from Dr. Deshommes herself consistently showed that Plaintiff had no neurological deficits.  Id.  Additionally, the ALJ noted that the opinion of Dr. Deshommes that Plaintiff "was capable of participating in activities for no more than 20 hours per week" was unsupported insofar as she provided no explanation for limiting Plaintiff to this particular amount of work.   Id.

Further, in discussing the weight afforded to Dr. Deshommes opinion, the ALJ properly pointed out that treating source opinions on issues reserved to the Commissioner are never entitled to controlling or special significance.  Id. at 36-37.   Thus, the ALJ explained that, insofar as the record includes Dr. Deshommes opinion on an issue reserved to the Commissioner (i.e., whether Plaintiff is disabled), she considered it the to the extent said opinion is consistent with the assessed residual functional capacity.  Id. at 37.

Accordingly, the Court finds that the ALJ properly gave less than controlling weight to the opinion of treating physician Dr. Deshommes.

**C.    The ALJ Properly Assessed the Opinion of Consultative Examiner Picinich**

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence insofar as the "ALJ improperly relied on the vague medical source statement of Dr. Picinich" who opined that Plaintiff was "limited to a mild to moderate extent for prolonged sitting, standing, walking, climbing stairs, bending, lifting, carrying, and kneeling due to low back pain."  Dkt. No. 12-1 at 24 (citing T. 417).

In this case, the ALJ determined that Plaintiff had the RFC to perform light work, with the following limitations: she cannot lift, push, or pull more than 10 pounds; she would need a sit/stand work option; she can occasionally climb ladders, ropes or scaffolds and occasionally climb ramps or stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she would need to avoid even moderate exposure to dust, odors, fumes, gases, poorly ventilated spaces, and environmental irritants; she is capable of understanding and remembering simple directions and performing simple task; she is capable of learning new tasks and performing complex tasks; she is capable of making appropriate decisions, relating to others, and maintaining attention and concentration as necessary for a regular schedule.   T. 32.   The ALJ's RFC determination is supported by substantial evidence in the record.

With respect to Plaintiff's physical limitations, the ALJ afforded "great" weight to the opinion of consultative examiner

Dr. Picinich on the basis that Dr. Picinich's opinion was consistent with her examination observations and with the other medical evidence.  T. 37.

Plaintiff argues that the opinion from Dr. Picinich that Plaintiff had "mild to moderate" limitations in various extertional activities is vague and conclusory therefore must be rejected as insufficient to satisfy the ALJ's fifth-step burden pursuant to citing to Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000).  In Curry, the ALJ had relied on a doctor's opinion that "plaintiff's impairment is: lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" in determining Plaintiff's RFC."  Id.  The Second Circuit characterized this type of evidence as "so vague as to render it useless in evaluating whether Curry can perform sedentary work.  In particular, [the doctor's] use of the terms 'moderate' and 'mild' does not permit the ALJ . . . to make the necessary inference that [plaintiff] can perform sedentary work."  Id.

While the language Dr. Picinich used in her opinion is similar to that used in Curry, that case is factually dissimilar to the case at bar.  In Curry, the only evidence supporting the ALJ's RFC determination was the opinion of one doctor who simply opined, without additional information, that "plaintiff's impairment is: lifting and carrying moderate; standing and walking, pushing and

pulling and sitting mild." Curry, 209 F3d at 123.  That is the not the case here.

Rather, in this case, there was other objective evidence in the record to support this determination.  The ALJ discussed, at length, Plaintiff's physical health history (T. 36-38) and specifically explained how Dr. Picinich's opinion with respect to Plaintiff's functional limitations was consistent with Dr. Picinich's examination observations.  For instance, the ALJ noted that Dr. Picinich reported that Plaintiff had a normal gait and stance and was able to walk on her heels and toes without difficulty, she needed no assistance with changing or getting on or off the examination table, and she was able to rise from a chair without difficulty.  Further, the ALJ pointed out that Dr. Picinich reported that she did not observe body system abnormalities aside from mild tenderness to palpation in Plaintiff's abdomen, and that Plaintiff demonstrated full strength but limited range of motion in her spine and hips.  The ALJ also noted that Dr. Picinich observed that Plaintiff had lost normal primary and secondary curves in her spine, her straight leg testing was positive in lying but not in the seated position.  Dr. Picinich did not observe any motor or sensory deficits, and Plaintiff demonstrated full grip strength and her hand/finger dexterity was intact.

Accordingly, the Court finds that the ALJ properly assessed the opinion of consultative examiner Picinich and that the ALJ's physical RFC determination is supported by substantial evidence in the record.

### D.    The ALJ's Credibility Assessment was Proper

Plaintiff argues that the ALJ's credibility assessment is the product of legal error insofar as the ALJ declined to fully credit Plaintiff's subjective complaints of disabling back pain.  Dkt. No. 12-1 at 26-28.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistence with the RFC.  T. 33.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 U.S. Dist. LEXIS 37978, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013).  Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility.  Id. This Court, as well as others in this Circuit, have found it improper for an ALJ to find a plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding."  Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 U.S. Dist. LEXIS 100826, 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2010 U.S. Dist. LEXIS 90689, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 90686, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other

citations omitted)).  Instead, SSR 96-7p, 1996 SSR LEXIS 4 requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 SSR LEXIS 4, at *3, 1996 WL 374186, at *4 (S.S.A. July 2, 1996);  20 C.F.R. §§ 404.1529, 416.929.

Here, however, the ALJ measured Plaintiff's credibility by evaluating the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC.  The ALJ discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, and the treatment of Plaintiff's symptoms.  The ALJ determines issues of credibility and great deference is given her judgment. Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

Specifically, the ALJ noted that Plaintiff complained of disabling back pain that prevented her from working, and that Plaintiff described this back pain as a "constant[,] throbbing pain in her back, neck, and legs" that required her to "shift positions to relieve the pain."  T. 33.  The ALJ also noted that Plaintiff complained that she was unable to sit more than 30 minutes at a time and that she occasionally needs to get help getting in and out of chairs and is unable to sit in a tub to take baths.  T. 33-34. The ALJ compared Plaintiff's alleged pain and related symptoms with her testimony that she lives alone, is able to walk to the grocery store, and does not use an assistive device to move around. T. 33-34.  The ALJ also discussed Plaintiff's testimony that she occasionally cleans and cooks for herself, does laundry for herself regularly, and that she regularly cares for her grandchildren.  The

ALJ also pointed out that Plaintiff testified that she uses public transportation, as needed, and had taken a bus to the hearing, which took a half hour plus another 15 minutes of walking from the bus stop to the hearing site.  T. 33.

The ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's physical residual functional capacity, the ALJ determined that Plaintiff would require light work with a sit/stand option and that she could occasionally climb, ladders, ropes or scaffolds, ramps or stairs, and could occasionally balance, stoop, kneel, crouch, and crawl.  T. 26.

Accordingly, the Court rejects Plaintiff's contention that the ALJ erred in assessing Plaintiff's credibility.

### E.   The Appeals Council Properly Considered the Additional Evidence Submitted after the Administrative Hearing

Plaintiff argues that the Appeals Council failed to acknowledge that Plaintiff submitted additional evidence after the ALJ rendered her decision, namely an October 14, 2011 statement from Dr. Deshommes in which she opined that Plaintiff could only sit for two to four hours out of an eight hour day.  Dkt. No. 12-1 at 28-29.  This argument is belied by the record.

In its February 15, 2013 Action Letter, the Appeals Council explicitly stated that "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. Specifically, we examined a Physical Assessment of Determination of Employability, with the opinion of Beatrice Deshommes, M.D. and

attached record from Rochester General Medicine Group." T. 2. The evidence listed on the Appeals Council Exhibits List includes "Physical Assessment for Determination of Employability, dated Oct. 14, 2011." T. 5 (reproduced at 479-483).

Further, the Appeals Council explained that, "[w]e considered whether the [ALJ's] action, findings, or conclusions is contrary to the weight of the evidence of record. We found that this information does not provide a basis for changing the [ALJ's] decision." T. 2.

Accordingly, the Court finds no merit to Plaintiff's argument that the Appeals Council failed to acknowledge that Plaintiff submitted additional evidence after the ALJ issued her decision.

### CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings is granted, the Plaintiff's cross-motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    April 29, 2014
          Rochester, New York